UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ANAMELIA WRIGHT,** on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**POST UNIVERSITY, INC.**<br><br>*Defendant*. | Civil Case No.: 25-cv-1555-SVN |

### JOINT RULE 26(f) REPORT

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, Plaintiff Anamelia Wright ("Plaintiff"), and Defendant Post University, Inc. ("Defendant" or "Post University") hereby submit this Joint Report of the Parties' Planning Meeting. A conference was held on **November 5, 2025**. The participants were:

Anthony Paronich for the Plaintiff.

Adam Bowser and Andrea Gumushian for the Defendant.

I.   **Certification**

Undersigned counsel (after consultation with their clients) certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The Plaintiff's Telephone Consumer Protection Act ("TCPA") claims invoke federal question subject matter jurisdiction. *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

### B. Personal Jurisdiction

Personal jurisdiction over Post University, Inc. is not contested.

## III. Brief Description of the Case

### A. Claims of Plaintiff

This case involves a campaign by Post University, Inc. to make pre-recorded calls in alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. Ms. Wright is seeking to represent the following class of individuals:

> **Robocall Class:** All persons throughout the United States (1) to whom Defendant placed a call, (2) directed to a number assigned to a cellular telephone service, but did not provide their phone number to the Defendant, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification

Plaintiff disagrees with Defendant's characterization of both the facts and the applicable law. The core issue in this case is not, as Defendant suggests, whether Ms. Wright or someone else submitted an online inquiry, but whether Defendant placed calls featuring an artificial or prerecorded voice to cellular telephones without valid prior express written consent, as required by the TCPA, 47 U.S.C. § 227(b)(1)(A).

Defendant's assertion that it "received an online inquiry" from Ms. Wright is a disputed factual claim. Plaintiff denies submitting the alleged inquiry, denies providing the telephone number at issue to Defendant, and denies providing consent of any kind. Any purported online form is also subject to significant factual scrutiny, including but not limited to the authenticity and reliability of Defendant's lead-generation and data-collection systems and whether Defendant's website and disclosures satisfy the requirements for prior express written consent, including the requirement that the consent be "clear and conspicuous," "unambiguous," and "signed" by the person called.

Defendant also contends that Plaintiff lacks standing because a prerecorded voicemail is somehow no different from a pre-recorded message when a call was answered. A prerecorded voice is a statutory violation even when the message is short or left by an agent who could theoretically have spoken live. The inquiry turns on what the caller used, not whether the recipient could tell the difference or would have suffered a similar annoyance.

Finally, the Plaintiff further disagrees that a "wrong number" TCPA cases are inappropriate for class certification. "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition."). And this remains true for "wrong number" TCPA class actions. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying a "wrong number" TCPA class over objection); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*,

339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying two "non-debtor" TCPA classes over objection).

Accordingly, Plaintiff contends that these disputed factual and legal issues are properly resolved through discovery, class certification proceedings, and subsequent merits motions rather than by accepting Defendant's self-serving narrative at this early stage.

### B. **Post University, Inc.**'s **Defenses and Claims**

The facts of this case are simple. Defendant Post University received an online inquiry on July 12, 2025 from an individual identifying herself as Plaintiff Anamelia Wright, listing (1) the subject telephone number alleged in the Complaint as the telephone number at which to contact Ms. Wright, (2) a Gmail address that clearly appears to be associated with Ms. Wright (her first and last name followed by the number 13), and (3) a physical address that public records indicate is Ms. Wright's current address. The individual submitting this online request for information about Post University's educational programs further affirmatively consented to the following disclosure:

> By clicking the button below, Post University has your consent to use automated technology to call, text and email you regarding its educational services at the contact information provided above. It is not a requirement to provide this consent to attend Post University. Post University's Terms and Privacy Policy apply.

Post University had, and has, no reason to doubt that Ms. Wright was not the individual who provided her prior express written consent for the University to contact her in response to her inquiry, and subject to the University's Terms, available here: [Terms & Conditions | Post University](#) (containing, among other provisions, a detailed "Telephonic Contact Terms & Conditions," as well as an informal dispute resolution requirement, followed by arbitration with the AAA to resolve disputes such as Ms. Wright's).

In response to this detailed inquiry, a Post University admissions counselor attempted to contact Ms. Wright using the contact information provided for this purpose. While the Complaint seems to imply that Post University sent Ms. Wright an impersonal robocall to which she could not object to during the recording, what she is in fact complaining about is a voicemail message left by a Post University admissions counselor. Such a message could be either left "live" by the admissions counselor, or they have the *option* to leave the same message by playing a recorded sound file. In either case, the admissions counselor placing the call in response to the inquiry received was available to speak with Ms. Wright had she picked up the phone, and the steps Ms. Wright would have to take to check her voicemail would be **exactly the same** whether the admissions counselor spoke the same message or played the soundfile indicating that the University "received your inquiry for more information about our online degree program" and to call the University back. Compl. ¶ 20.

Given the foregoing, the University's position is primarily two-fold. First, even if Plaintiff is taking the apparent position that someone else provided the University her exact contact information to receive the requested information, the voicemail actually at issue fails to satisfy Article III standing requirements. While most standing challenges address whether the plaintiff suffered a "concrete injury," the Supreme Court's standing test also requires a plaintiff to

demonstrate that the alleged injury in fact is "fairly traceable" to the defendant's allegedly wrongful conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("there must be a causal connection between the injury and the conduct complained of"). That means that if a plaintiff "would have been injured in precisely the same way even if the [defendant] had not engaged in the conduct that he claimed was unlawful," there can be no "standing because of the failure to trace the injury to the unlawful conduct." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019). Here, whether the admissions counselor spoke the message or played a corresponding sound file after not reaching Plaintiff, there can be no legitimate question that plaintiff would have been "injured in precisely the same way." Indeed, *all* voicemails are recorded *prior to* the recipient listening to them. In other words, voicemails are *all prerecorded* from the listener's perspective.

Second, whether it was in fact Plaintiff or someone else who submitted Plaintiff's precise contact information along with an express request to be called back by the University, these individualized facts should never have launched a putative class action. *See Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063, at *17 (S.D.N.Y. Aug. 14, 2019) (refusing to certify "wrong number" TCPA class action and noting it was joining the "chorus of other courts faced with TCPA class actions that have found such individualized inquiries on the consent issue precluded class certification"); *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (reversing class certification in TCPA case because "the predominant issue of fact is undoubtedly one of *individual* consent," and thus predominance was lacking); *Steven A. Conner, DPM, P.C. v. Fox Rehab. Servs., P.C.*, 2025 WL 289230, at *14 (3d Cir. Jan. 24, 2025) (affirming denial of class certification in TCPA case because it "would require thousands of mini trials on the individualized issue of" consent); *Davis v. Cap. One N.A.*, No. 24-1507, 2025 WL

2445880, at *6 (4th Cir. Aug. 26, 2025) (affirming denial of class certification in a prerecorded "wrong-number" case; consent and reassigned-number issues required individualized inquiries that overwhelmed common proof).

Plaintiff's wholly conclusory allegation that "[u]pon [no alleged] information and belief, Defendant, as a matter of pattern and practice" places prerecorded calls to mobile phones "absent prior express consent," Compl. ¶ 32, will necessarily require individualized inquiries not only as to each to prospective student who contacts the University to request information regarding its educational services, but also on a voicemail-by-voicemail basis to determine whether each such message was spoken "live" or the admissions counselor played a corresponding sound file.

## II. Statement of Undisputed Facts

The following material facts are not in dispute:

- The Plaintiff has filed a lawsuit alleging violations of the TCPA.
- Defendant is headquartered in this District.
- Plaintiff is an individual.

## III. Case Management Plan

### A. Initial Disclosures

The parties anticipate exchanging initial disclosures by November 24, 2025.

### B. Scheduling Conference

1. The parties request to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

2. The parties prefer that a scheduling conference, if held, be conducted by telephone.

### C. Early Settlement Conference

1. The parties certify that they have considered the potential benefits of attempting to

settle the case before undertaking significant discovery or motion practice. The Plaintiff believes that some discovery is required to evaluate the likely outcome of the claim and explore the affirmative defenses lodged, including any purported consent that existed to make the calls at issue, in anticipation of a potential class wide resolution.

2. The parties prefer a settlement conference, when such a conference is held, with a private mediator.

**D.     Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings**

The parties have discussed any perceived defects in the pleadings and have reached the following agreements for resolution of any issues related to the sufficiency of the pleadings: **None**.

1. The parties agree that they should be allowed until **January 16, 2026** to file motions to join additional parties and until **January 16, 2026** to file motions to amend the pleadings. Such motions filed after the imposed deadline will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

**E.     Discovery**

a. Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1).

b. All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), completed (not propounded) by:

Parties' Position:  **July 17, 2026.**

c. Discovery will not be conducted in phases.

  d. Each party anticipates that they will require a total of 5-6 depositions of fact witnesses, including a single corporate deposition, if necessary. The depositions will be completed by:

  Parties' Position: **June 5, 2026**

  e. The parties do not anticipating requesting permission to serve more than 25 interrogatories.

  f. The parties are unsure if they will call expert witnesses at trial at this time.

  g. Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by:

  Parties' Position: **June 16, 2026**. Depositions of any such experts will be completed by **July 17, 2026.**

  h. A damages analysis will be provided by any party who has a claim or counterclaim for damages by **July 17, 2026.**

  l. Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) and self-represented parties have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information.

m. Undersigned counsel (after consultation with their clients) and self-represented parties have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms.

n. Undersigned counsel and self-represented parties have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production.

F. **Other Scheduling Issues**

Parties' Position: The Plaintiff will file a motion for class certification by **July 24, 2026.**

G. **Summary Judgment Motions**

Summary judgment motions, which must comply with Local Rule 56, will be filed:

Parties' Position:

H. **Joint Trial Memorandum**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by:

Parties' Position: The parties propose the Court set a deadline for Trial Memoranda following resolution of Plaintiff's Motion for Class Certification.

IV. **Trial Readiness**

The case will be ready for trial by:

Parties' Position: The parties propose the Court set a trial date following resolution of Plaintiff's Motion for Class Certification.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

| PLAINTIFF | DEFENDANT |
|---|---|
| By: */s/ Anthony I. Paronich*<br>Anthony Paronich<br>PARONICH LAW, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>Telephone: (617) 485-0018<br>Facsimile: (508) 318-8100<br>Email: anthony@paronichlaw.com | By: */s/ Adam D. Bowser*<br>Adam D. Bowser (*pro hac vice application pending*)<br>ArentFox Schiff LLP<br>1717 K ST NW<br>Washington, DC 20006<br>Telephone: (202) 857-6126<br>Email: adam.bowser@afslaw.com<br><br>By: */s/ Andrea M. Gumushian*<br>Andrea M. Gumushian (*pro hac vice application pending*)<br>ArentFox Schiff LLP<br>1717 K ST NW<br>Washington, DC 20006<br>Telephone: (202) 857-6080<br>Email: andrea.gumushian@afslaw.com |